IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| EARL MOORE | : | No. 08-730 |

## MEMORANDUM

**Juan R. Sánchez, J.**　　　　　　　　　　　　　　　　　　　　　　　**January 6, 2010**

Police attempted to stop a vehicle driven by Earl Moore, the target of an investigation by the Drug Enforcement Agency (DEA), while Moore was on his way to purchase drugs from a DEA informant. A brief car chase ensued. Moore was caught and arrested with two bags containing $165,000. He seeks to suppress evidence found after police stopped his car, arguing the reasons for the stop were pretextual and the police lacked probable.[1]

**Findings of Fact**

1. DEA agents were conducting a drug-related investigation of Jerome Nixon, a/k/a Earl Moore (Moore), with the help of a confidential informant. The informant told DEA agents Moore sought to purchase a large quantity of cocaine on October 1, 2009.

2. On October 1, 2009, DEA agents briefed Philadelphia Police Officer Brian Newell about their investigation of Moore. Officer Newell informed the agents he knew Moore, and was aware Moore had a suspended driver's license due to unpaid tickets. The agents instructed

---

[1] Moore also challenged statements made to DEA agents before he was informed of his *Miranda* rights, but dropped this objection during the suppression hearing after the Government agreed to not introduce these statements.

Officer Newell to stop Moore if he observed Moore driving a vehicle. Officer Newell agreed.

3. Officer Newell knew Moore because he had stopped him for traffic violations two or three times.

4. Later that day, Officer Newell was a passenger in a police car parked near the corner of Oregon Avenue and 6th Street. The car was driven by Officer Newell's partner, Officer Joe McDonald. DEA agents used radio communication to inform the officers Moore was driving down Oregon Avenue in a white Acura, followed by a second vehicle. Officers Newell and McDonald observed Moore driving the Acura. They followed him eastbound on Oregon Avenue, immediately initiating the police car's flashing lights.

5. Moore pulled the Acura into the Whitman Plaza shopping center and stopped the car. The second vehicle, a Pontiac, pulled up next to the Acura, and a passenger exited the Pontiac. Officer Newell exited his car to approach Moore. Moore yelled something to the Pontiac's former passenger, then drove away.

6. Officers Newell and McDonald saw Moore turn westbound into the eastbound lanes of Oregon Avenue. They broadcast Moore's escape on the police radio. Although they pursued Moore on Oregon Avenue, the officers lost sight of Moore's car. By radio, the officers heard Moore's car had been stopped. They joined the other officers at the scene, where Moore was being arrested after exiting his car with two bags.

7. Philadelphia police issued a traffic citation to Moore for driving with a suspended license.

8. At the scene of Moore's arrest, police recovered two bags containing $165,000 and a sheet of paper containing numerical data.

**Conclusions of Law**

Where searches and seizures are conducted without a warrant, the Fourth Amendment requires the Government show, by a preponderance of the evidence, that such searches and seizures were reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Stops are reasonable where police have reasonable suspicion, based on articulable facts, that "criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30 (1968). Further, it is reasonable to effect a traffic stop where there is probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1995). In evaluating the constitutionality of vehicle seizures and searches, an officer's subjective intent "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* at 813 (citation and internal quotation marks omitted).

First, even if no traffic violation was made by Moore, the police officers had reasonable suspicion to conduct a *Terry* stop. The DEA agents informed Officer Newell of facts related to the ongoing investigation of Moore, which included information, provided by a reliable informant, that Moore was on his way to purchase drugs. These facts are sufficient to give Officer Newell reasonable suspicion Moore was engaged in criminal activity, and thus attempting to stop Moore's vehicle was not a violation of Moore's Fourth Amendment rights.

Second, Officer Newell's attempt to stop Moore's vehicle is legitimate under *Whren* because Officer Newell had probable cause to believe Moore was committing a traffic violation by driving without a license. Officer Newell knew Moore from previous encounters, and knew Moore's driver's license had been suspended because he failed to pay his traffic fines. Driving without a valid license constitutes a traffic violation. While Officer Newell also knew Moore was the target of a drug-related investigation and was attempting to stop Moore based on instructions from DEA

agents, such facts about Officer Newell's subjective intent are irrelevant. In light Officer Newell's reasonable belief Moore was violating a traffic law, the stop of Moore was reasonable.

Finally, even if there was not reasonable suspicion of criminal activity and probable cause to believe a traffic violation occurred, there can be no Fourth Amendment violation based on the officers' initial stop of Moore because there was no "seizure" until the conclusion of the police chase. In *United States v. Sinkler*, the Third Circuit addressed evidence gathered during the arrest of a suspect after he initially pulled his car over, but then proceeded to lead police on a car chase. 91 Fed. Appx. 226, 229 (3d Cir. 2004). In ruling the seizure did not occur until the chase ended, the court explained that "a suspect is only seized, for Fourth Amendment purposes, where there has been an application of physical force, or a show of authority to which the suspect submits." *Id.* at 230 (citing *California v. Hodari D.*, 499 U.S. 621 (1991)). When a suspect flees instead of cooperating with police officers' attempt to stop his vehicle, he has not submitted to the officers' authority. *Sinkler*, 90 Fed. Appx. at 230. Although Moore initially stopped his vehicle, his actions do not indicate an intent to submit to the officers' search–instead, stopping the vehicle appears to be a ruse to lure the officers out of their vehicle in order to successfully evade capture. This is not the submission required by *Hodari D.* to constitute a "seizure" for Fourth Amendment purposes. Thus, like the court in *Sinkler*, this Court holds the "seizure" happened at the end of the car chase.

For the foregoing reasons, the Court finds there was no violation of Moore's Fourth Amendment rights during the search and seizure of his vehicle.

An appropriate order follows.