IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 08-730 |
| | : | |
| EARL MOORE | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                    **January 19, 2021**

Defendant Earl Moore, who is currently serving a 360-month term of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and home confinement pursuant to the CARES Act. Moore asserts the coronavirus disease 2019 (COVID-19) pandemic and his health conditions, which he claims place him at an increased risk of harm from the virus, are extraordinary and compelling circumstances justifying his release. The Government opposes Moore's motion, citing the offense of conviction, Moore's dangerousness to the community, and the numerous measures the Bureau of Prisons (BOP) has taken to manage Moore's medical conditions and prevent the spread of COVID-19 in its facilities. Because Moore presents a danger to the community and the statutory sentencing factors weigh against his release, the Court will deny his motion.

## BACKGROUND

On January 11, 2010, a jury convicted Moore of attempted distribution of five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. On May 26, 2010, the Court sentenced Moore to 360 months of incarceration.  Moore was categorized as a career offender within the meaning of § 4B1.1 of the Sentencing Guidelines because he has two prior convictions for a controlled substance offense and a firearms offense. Moore was serving the start of his sentence at Federal Correctional Institution (FCI) Schuylkill when, on March 4, 2013, he stabbed another inmate with

an unknown object over 15 times. There are also a number of other minor, nonviolent infractions on his record. He is now serving his sentence at FCI Hazelton with an anticipated release date of December 12, 2035.

Since Moore's sentencing, much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Symptoms of Coronavirus,* Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last updated December 22, 2020). To date, the virus has infected nearly 21,259,997 people in the United States and resulted in 359,849 deaths. *See United States COVID-19 Cases and Deaths by State*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 7, 2021).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People at Increased Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Jan. 4, 2021). High risk underlying medical conditions include chronic kidney disease, serious heart conditions, severe obesity, sickle cell disease, cancer, and immunocompromised conditions from smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id*.

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In many states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed, and people are avoiding gatherings of any kind.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/index.html (last updated Dec. 23, 2020). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

In early 2020, Moore submitted a request for compassionate release to the warden of FCI Hazelton alleging he had a debilitating medical condition. On June 1, 2020, the warden denied the request, finding Moore did not have such a condition. On April 1 and July 13, 2020, Moore submitted the instant pro se requests for compassionate release and home confinement. *See* Def.'s Letters, ECF No. 132, 133. In the April 1, 2020, letter, Moore sought release pursuant to 18 U.S.C. § 3582(c)(1)(A) claiming he (1) has heart issues and high blood pressure, (2) is a nonviolent

offender, and (3) has rehabilitated himself and avoided trouble during his time in prison. In the July 13, 2020, letter, Moore also requested release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act and further described his medical conditions and the facilities at FCI Hazelton.

Moore requests immediate release from FCI Hazelton to serve the remainder of his sentence in home confinement in Philadelphia, Pennsylvania. He asserts the COVID-19 pandemic and his hypertension, chronic kidney disease, and obesity constitute extraordinary and compelling circumstances warranting his release. The Government opposes Moore's request and argues even if Moore's health problems are high-risk conditions that leave him at greater risk of harm from COVID-19, the compassionate release standard has not been met because of the other provisions of § 3582(c)(1)(A). Specifically, the Government argues the § 3553(a) factors and Moore's dangerousness to the community preclude his release. The Government also contests Moore's request for home confinement because the CARES Act does not give the Court authority to determine the place of confinement or review BOP decisions on the issue. Rather, the Government argues the CARES Act gives the BOP the exclusive power to lengthen the time a prisoner may spend in home confinement once the Attorney General approves such authority.

**DISCUSSION**

The Court finds Moore has failed to meet the standard for compassionate release and, because the Court also lacks the authority to immediately release Moore to home confinement under the CARES Act, Moore's motion is denied on both grounds. Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment

on a defendant's motion after the defendant has exhausted his administrative remedies.[1] In relevant part, § 3582(c)(1)(A) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 28 U.S.C. § 994(t). Rather, Congress delegated the authority to the U.S. Sentencing Commission, who "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id*.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—
>
> > (1)  (A)  extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3)  the reduction is consistent with this policy statement.

---

[1] A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Moore submitted a request to the warden of FCI Hazelton which was denied on June 1, 2020. Gov't's Resp. to Def.'s Mot. 3, ECF No. 134. Therefore, Moore has exhausted his administrative remedies.

U.S.S.G. § 1B1.13. Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant. U.S.S.G. § 1B1.13 n.1(A)–(C). Application Note 1 further provides a fourth "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D).

In addressing a motion for compassionate release pursuant § 3582(c)(1)(A), a court must therefore consider (1) extraordinary and compelling reasons for release, (2) the § 3553(a) sentencing factors, (3) dangerousness to the community as defined by § 3142(g), and (4) other policy statements by the Sentencing Commission. *See* U.S.S.G. § 1B1.13. The Government concedes Moore's health condition sufficiently meets the standard of extraordinary and compelling reasons. Gov't Resp. to Def.'s Mot. 14 n.5. Regardless, the Government argues Moore's motion fails for other reasons. *Id*. Even if Moore presents extraordinary and compelling reasons for a sentence reduction, the Court must also consider the other factors prescribed by Congress and the Sentencing Commission. Because the Court finds the § 3553(a) factors weigh against compassionate release and because Moore is a danger to the community, the Court will deny the motion.

The Court must begin by considering the § 3553(a) factors. The nature and circumstances of Moore's offense and his history and characteristics weigh against granting compassionate release. *See* § 3553(a)(1). A jury convicted Moore of the serious drug offense of attempting to purchase $165,000 in cocaine. Gov't Resp. to Def.'s Mot. 2–3, ECF No. 134. When Moore was arrested, he had in his possession enough cash to make the purchase and a "tally card," to track the purchase and distribution of the large quantity of narcotics to the community. *Id*. Moore's personal

history of numerous convictions for serious drug and firearms offense is also significant. It is precisely why Moore was categorized as a career offender at sentencing for this offense. When considering the purposes of punishment contained in § 3553(a)(2), the Court imposed a significant sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment. The Court imposed a serious sentence to afford deterrence to criminal conduct by Moore and others. Granting compassionate release at this point would undermine each of these statutory purposes of punishment because Moore has not served a significant portion of his sentence. *See, e.g.*, *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. May 8, 2020) (noting defendant who had served only seven years of his 18-year sentence had a "much different" case for compassionate release than "others where defendants are at the end of their sentence"); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. Apr. 1, 2020) (granting compassionate release to a defendant who had served 17 years of a 20-year sentence and was one year away from eligibility for home confinement).

Next, the Court finds that, upon consideration of Moore's crimes and his conduct while incarcerated, Moore is a danger to the community should he be released. The Sentencing Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out factors courts must consider in deciding whether to release a defendant pending trial, which include the defendant's possible danger to the community and the defendant's likelihood to appear at trial. Because § 1B1.13 cites § 3142(g) for compassionate release purposes after a defendant has been convicted and sentenced, the court need only consider the dangerousness factors. These factors are "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character,

physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The Court recognizes Moore's offense—attempted possession with intent to distribute cocaine—was not inherently violent. However, his brazen conduct in attempting to evade arrest weighs against compassionate release. Moore led the authorities on a high-speed vehicle chase through a populated area of South Philadelphia while driving on the wrong side of the road, endangering the public, law enforcement, and himself. Gov't Resp. to Def.'s Mot. 1–2, ECF No. 134. Moore's history and characteristics are likewise troubling. As previously discussed, Moore has a significant history of drug and firearms convictions prior to being sentenced for this offense. Most importantly, Moore assaulted another inmate by stabbing him 15 times while incarcerated at FCI Schuylkill. *See* Gov't Resp. to. Def.'s Mot. 3, ECF No. 134. Although this appears to be the only violent infraction on Moore's record, and more than seven years have passed since, Moore's account of this incident in the instant pro se motion is telling. In a letter to the Court, he wrote, "I have assaulted an inmate, and I had good reason to do that." Def's Letter 1, ECF No. 137. The Court acknowledges that Moore goes on to discuss his regrets, but the Court cannot ignore such indicia of future dangerousness. Accordingly, the nature and characteristics of Moore's offense, his history of violence, and the dangerousness he poses to the community weigh against his release.

The Court finds, despite Moore's higher risk health conditions, and after consideration of the § 3553(a) factors and Moore's dangerousness to the community if released, compassionate release is inappropriate at this time. *See, e.g.*, *United States v. Zubiate*, No. 18-442, 2020 WL 3127881, at *3 (S.D.N.Y. June 12, 2020) (relief denied where, despite defendant's CDC risk factor of severe obesity, release after only 26.5 months of 102-month sentence "would substantially

undermine the § 3553(a) factors"); *United States v. Oliver*, No. 17-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020) (relief denied where "reducing [the] sentence of a defendant with obesity] to time served when he has served only three months of a ten-year sentence would lead to unwarranted sentencing disparities and improperly minimize the serious nature of his drug-trafficking offense"); *United States v. Hamman*, No. 16-185, 2020 WL 3047371, at *5 (D. Or. June 8, 2020) (release denied despite significant medical issues because of the defendant's criminal history, the lack of any cases at USP Tucson, and he has served only 50% of his sentence).

Moore next argues the Court should use its discretionary authority to grant his release to home confinement pursuant to the CARES Act. *See* Def.'s Mot. 1, ECF No. 133. The Court, however, lacks the authority to transfer Moore to home confinement or review the BOP's decision on the matter. *See* 18 U.S.C. § 3621. The CARES Act states the BOP may "lengthen the maximum amount of time for which the Director of the [BOP] is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621). On April 3, 2020, the Attorney General granted the director of BOP with the authority to exercise this discretion.

The Court has no authority to order an inmate's release to home confinement or review the BOP's decision on that issue. *See* 18 U.S.C. § 3621(b)(5); *United States v. Pawlowski*, No. 17-390-1, 2020 WL 2526523, at *1 (E.D. Pa. May 18, 2020), *aff'd*, 967 F.3d 327 (3d Cir. 2020). Accordingly, the motion for release to home confinement is denied as well. This memorandum is not intended to preclude the BOP from exercising its authority to temporarily release Moore on home confinement.

**CONCLUSION**

In sum, the § 3553(a) sentencing factors and Moore's danger to the community preclude compassionate release and the Court will deny his motion.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.